**SO ORDERED.**

**SIGNED this 20 day of November, 2024.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO. 19-01656-5-DMW** |
| **LEIGH CHEEK RAYNOR,** | **CHAPTER 13** |
| Debtor | |
| | |
| **LEIGH CHEEK RAYNOR,** | |
| Plaintiff | **ADVERSARY PROCEEDING NO. 23-00109-5-DMW** |
| vs. | |
| **EDUCATIONAL CREDIT MANAGEMENT CORPORATION,** | |
| Defendant | |

## MEMORANDUM OPINION

This matter comes on to be heard upon the Complaint Seeking to Determine Dischargeability of Student Loan filed by Leigh Cheek Raynor ("Plaintiff") on December 20, 2023 and the Answer of Educational Credit Management Corporation to Plaintiff's Complaint filed by Educational Credit Management Corporation ("ECMC") on January 22, 2024. The court conducted a trial in Raleigh, North Carolina on August 6, 2024. Philip Sasser, Esq. appeared for

the Plaintiff, and Lisa P. Sumner, Esq. appeared for ECMC. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, this Opinion sets forth the court's findings of fact and conclusions of law:

## Jurisdiction

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## Findings of Fact

2. The Plaintiff filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on April 11, 2019 and received a discharge of debts under 11 U.S.C. § 1328(a) on July 30, 2024.

3. The Plaintiff executed three separate Promissory Notes ("Promissory Notes") on or about January 4, 1999, April 1, 1999, and August 10, 1999, under which four federally guaranteed Stafford loans were disbursed as reflected in the chart below:

| Loan | Loan Type | Distribution Date | Amount | Interest Rate | Interest Type |
|---|---|---|---|---|---|
| 1 | Stafford | 1/11/1999 | $8,343 | 7.76% | Variable |
| 2 | Stafford | 5/5/1999 | $763 | 7.76% | Variable |
| 3 | Stafford | 5/5/1999 | $1,394 | 7.76% | Variable |
| 4 | Stafford | 8/18/1999 | $8,350 | 7.76% | Variable |

4. The Plaintiff executed a Master Promissory Note ("Master Note") on or about July 14, 2000, under which eight federally guaranteed Stafford loans were disbursed as reflected in the chart below:

| Loan | Loan Type | Distribution Date | Amount | Interest Rate | Interest Type |
|---|---|---|---|---|---|
| 1 | Stafford | 8/11/2000 | $8,500 | 7.76% | Variable |
| 2 | Stafford | 8/16/2000 | $5,700 | 7.76% | Variable |
| 3 | Stafford | 3/9/2001 | $3,299 | 7.76% | Variable |
| 4 | Stafford | 3/27/2001 | $7,888 | 7.76% | Variable |
| 5 | Stafford | 5/10/2001 | $4,037 | 7.76% | Variable |
| 6 | Stafford | 8/10/2001 | $8,500 | 7.76% | Variable |
| 7 | Stafford | 8/15/2001 | $3,392.50 | 7.76% | Variable |
| 8 | Stafford | 1/16/2002 | $3,231 | 7.76% | Variable |

5.      The Promissory Notes and Master Note (collectively, "Notes") evidence student loans made to the Plaintiff under a program funded in whole or in part by a governmental unit within the meaning of 11 U.S.C. § 523(a)(8). The program, referred to as the Federal Family Education Loan Program ("FFELP"), formerly known as the Guaranteed Student Loan Program, was established by the Higher Education Act of 1965, as codified at 20 U.S.C. § 1071 *et seq.*

6.      ECMC is a private, nonprofit corporation and a guaranty agency under the FFELP. ECMC currently holds all right, title and interest in the Notes. The unpaid balance of the Notes was $80,408.84 as of June 9, 2024.[1]

7.      The Plaintiff attended college earlier in life, and in 1997,[2] she decided to return to college to finish her undergraduate degree. After obtaining that degree in 1999, the Plaintiff continued her education at the University of North Carolina at Chapel Hill, obtaining a master's degree in rehabilitation, psychology and counseling in 2002. After completing her studies, the Plaintiff failed to enter the professional field in which she obtained her graduate degree. Instead, she worked in a gift shop and a clothing store. At some point she maintained an office in her home

---

[1] Much of the information on the loans was obtained from the proposed Consent Judgment between the parties. The Consent Judgment was an exhibit to the Motion to Approve Consent Judgment filed by ECMC on June 25, 2024. The court declined to allow that Motion.

[2] The Plaintiff testified her belief that she was in her "early sixties" when she returned to school; however, based upon her current age and the year she completed her undergraduate degree, the Plaintiff appears to be mistaken about her age when she returned to school.

for professional counseling; however, the testimony lacks sufficient information on the amount of income generated by this professional work.

8. The Plaintiff could not recall when she started making payments on one or more of the Notes but believed she was required to begin making payments in 2002, after graduate school. At the time the Plaintiff would have been required to begin making payment on one or more of the Promissory Notes, she elected to obtain additional loans for graduate school.

9. The Plaintiff's testimony contains little detail of her financial situation from 2002 to the date of her Chapter 13 petition, April 11, 2019. In general terms the Plaintiff, who was born in Durham, NC, and her husband, Reed Raynor ("Raynor"), relocated from Ahoskie, NC to Chapel Hill, NC for their disabled son to receive special care. The date of this move is uncertain, but it is assumed it was after 2002. The Plaintiff commented that she also had a daughter but did not elaborate.

10. The Plaintiff provided no financial information or details on any ability or inability to pay the Notes after she obtained her graduate degree, other than stating than Raynor "did not have a job," that ". . . we really had nothing. And our friends really helped us through that period."

11. The Plaintiff could not provide dates of her loan repayment attempts. She recalled that when "the student loan people were really leaning on [the Plaintiff] and going to do something," the Plaintiff got an attorney and talked to an "Assistant DA."

12. It is undisputed that the Plaintiff made a total of $6,000 in payments at the rate of $50 per month for ten years. Her actual payment was $900 per month. It is unclear if the $50 per month repayment amount was through negotiations or through the Plaintiff's voluntary payments, as the Plaintiff was unclear whether she had successfully pursued a debt restructuring, consolidation or forgiveness plan with ECMC. The Plaintiff stated she had talked to "the people

4

at NCSAA" and obtained a reduction in the monthly payment amount, but she did not explain who or what that entity was, and she could not recall what reduction NCSAA may have helped her receive. She also mentioned working with SCORE[3] to discuss loan consolidation, but "that didn't work."

13. Upon cross-examination the Plaintiff stated she recalled pursuing a program to lower her payments consistent with her income. She recited these efforts were in 2006, 2008 and 2009 but could not provide any details or support for those efforts.

14. The Plaintiff is 76 years old, has been married to Raynor for 56 years and is unemployed. She and 78-year-old Raynor live at 1209 Roosevelt Drive, Chapel Hill, NC 27514 ("Residence"). In the Schedules filed with the court, the Plaintiff did not claim any ownership interest in the Residence which has a current tax value of $388,300. The Plaintiff's current source of income is from Social Security in the amount of approximately $1,806 per month. Raynor is unemployed and has dementia and other medical problems. He receives approximately $1,500 per month in Social Security income. The Plaintiff and Raynor lease the "appendage" to the Residence through Airbnb, but that rental has not made a profit yet, according to the Plaintiff.

15. The Plaintiff admitted that the Plaintiff's mother, Alice R. Faulkner ("Faulkner"), conveyed the Residence to Raynor in 2011. The Plaintiff was not a grantee under the deed.

16. While the Plaintiff could not confirm her independent knowledge of the transaction, the public record reflects that after the conveyance to Raynor, the Plaintiff and Raynor executed a Deed of Trust ("Deed of Trust") dated June 22, 2011 and recorded in Book 5188, Page 143 of the

---

[3] SCORE is a nonprofit organization pursuant to Section 501(c)(3) of the Internal Revenue Code and a resource partner of the United States Small Business Administration. It provides support, education and mentorship programs for small business owners and entrepreneurs.

Orange County Registry on July 14, 2011 in favor of Faulkner to secure a Promissory Note ("Faulkner Note") in the original principal amount of $53,711.81.

17.     The public record also reflects that the trustee under the Deed of Trust filed a Notice of Satisfaction on August 22, 2014 in Book 5837, Page 13 of the Orange County Registry, leaving the Residence unencumbered.  The Plaintiff was unable to account for the source of funds used to repay the Faulkner Note.

18.     The Plaintiff stated Faulkner died in 2011 and left the Plaintiff's share of the inheritance to Raynor and not her.

## Discussion

19.     The Plaintiff alleges that repayment of her student loan obligation would cause an undue hardship for herself and her spouse, and the obligation owed pursuant to the Notes should be discharged under the undue hardship exception stated in 11 U.S.C. § 523(a)(8).

20.     A Chapter 13 discharge does not discharge an individual debtor from a debt for an educational loan "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution," "unless excepting such debt . . . would impose an *undue hardship* on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added).  Because the Code does not define "undue hardship," the United States Court of Appeals for the Fourth Circuit analyzed its meaning, noting that "'[u]ndue' generally means 'unwarranted' or 'excessive.'" *In re Frushour*, 433 F.3d 393, 399 (4th Cir. 2005) (citing *The Random House Dictionary of the English Language* 2066 (2d ed. 1987)).  The Fourth Circuit thus reasoned:

> Because Congress selected the word "undue," the required hardship under § 523(a)(8) must be more than the usual hardship that accompanies bankruptcy. Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship.  The exception would swallow the rule, and

6

> Congress's restriction would be meaningless. As a result, "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans." . . . This heightened standard protects the integrity of the student-loan program and saves it "from fiscal doom." It also ensures public support for the program by preventing debtors from easily discharging their debts at the expense of taxpayers who made possible their educations.

*Id.* at 399-400 (quoting *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001), *In re Faish*, 72 F.3d 298, 302 (3d Cir. 1995)) (other citations omitted).

21. The Fourth Circuit applies the United States Court of Appeals for the Second Circuit's widely followed, three-part *Brunner* test for consideration of "undue hardship." *See, e.g., In re Ekenasi*, 325 F.3d 541, 546 (4th Cir. 2003) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)). In *Brunner*, the Second Circuit held that to establish an undue hardship, a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. In *In re Ward*, this court determined that it "is bound by the precedent of the Fourth Circuit Court of Appeals and must apply the *Brunner* test." *Ward*, Misc. Pro. No. H–12–00001–8–MP, 2013 WL 4136093, at *4 (Bankr. E.D.N.C. Aug. 9, 2013), *subsequently aff'd sub nom. Ward v. U.S. Dep't of Educ.*, 588 F. App'x 282 (4th Cir. 2014) (rejecting argument that the court need not follow *Brunner*).

22. Under the *Brunner* test, a debtor bears the burden of proof and must satisfy all three prongs in order for student loans to be dischargeable. *In re Vujovic*, 388 B.R. 684, 688 (Bankr. E.D.N.C. 2008). "Moreover, this test must be strictly construed: equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis of 'undue

7

hardship.'" *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001) (citing *In re Faish*, 72 F.3d 298, 306 (3d Cir. 1995)); *see also In re Murphy*, 305 B.R. 780, 802 (Bankr. E.D. Va. 2004) (holding that "discharge of a student loan must be founded on more than notions of sympathy or fairness").

23.     When considering the first prong of the *Brunner* test, a court must look at a debtor's current income and expenses. Aside from Raynor's Social Security and the income from the Residence, the Plaintiff relies solely on her Social Security of approximately $1,806 per month. Even though the Plaintiff has not provided an accounting of her actual expenses aside from Schedule J filed in 2019, the court is satisfied that the Plaintiff is not living frivolously and cannot realistically both maintain a minimal standard of living and pay the Notes at a rate of $900 per month based upon her current income. Accordingly, the Plaintiff has met her burden of proof with respect to the first part of the *Brunner* test.

24.     The second *Brunner* factor is "prospective in nature and looks for exceptional circumstances beyond the debtor's current situation." *Frushour*, 433 F.3d at 401. The Fourth Circuit elaborated:

> [W]hether "additional circumstances" exist to indicate that the debtor's situation is likely to persist for a significant portion of the loan repayment period, "is the heart of the *Brunner* test." This factor "most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." We have characterized this as "a demanding requirement" necessitating "a certainty of hopelessness" which confirms that the debtor will not be able to repay the loans.

*In re Spence*, 541 F.3d 538, 544 (4th Cir. 2008) (quoting *Frushour*, 433 F.3d at 401 (internal marks omitted)). "[I]llness, disability, a lack of useable job skills, or the existence of a large number of dependents" are rare circumstances that might satisfy the second part of the *Brunner* test. *Frushour*, 433 F.3d at 401 (quoting *In re Oyler*, 397 F.3d 382, 386 (6th Cir. 2005)).

8

25. In *Spence*, the Fourth Circuit was presented with a debtor with certain similar circumstances to the Plaintiff. Ms. Spence was over 65 years old and incurred student loan debt with a balance of approximately $161,000 to pay for her education. *Spence*, 541 F.3d at 541-42. She held bachelor's and master's degrees and only needed to complete a dissertation to obtain a Ph.D. *Id.* at 542. Ms. Spence had a history of sporadic employment, including temporary clerical positions, and at the time of her Chapter 7 bankruptcy, her income was not sufficient to maintain her expenses for rent, food, delinquent taxes, medication, laundry and entertainment. *Id.* The Fourth Circuit affirmed the district court's finding that "Ms. Spence articulated no 'additional circumstances' beyond her age and current financial distress that would prevent her from repaying her loans . . . ." *Id.* at 542-43. Specifically, the Fourth Circuit opined:

> She is now in her late 60s and has a low-paying job, but she is by all accounts a reliable, diligent worker with a master's degree along with completed Ph.D. course work. Her grades were excellent, and her education is not so outdated that higher-paying alternatives would be unreachable. Ms. Spence suffers from diabetes and high blood pressure, but neither these ailments nor any other age-related health problems affect her ability to work full-time. She has had difficulty obtaining a higher paying position, but she has not actively sought other employment or even updated her resume since obtaining the full-time job at E*trade. We have said that "[h]aving a low-paying job . . . does not in itself provide undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs." We are not unsympathetic to the disadvantages of her current circumstances, but the facts point to no "additional circumstances," outside of the normal hardships faced by bankruptcy petitioners, that would render her situation hopeless.

*Id.* at 544 (quoting *Frushour*, 433 F.3d at 401).

26. With respect to the second *Brunner* prong, the Plaintiff's situation is different from the debtor in *Spence*. The Plaintiff is 76 years old and cares for her ailing husband. It is unlikely that the Plaintiff, if she is able to find employment, will generate sufficient income to repay the Notes.

27. Although the Plaintiff meets the first two prongs of the *Brunner* test, she fails the third part requiring that she made good faith efforts to repay the Notes, rendering the Notes nondischargeable.

28. "Good faith consists of the debtor's 'efforts to *obtain employment, maximize income,* and *minimize expenses.*'" *In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008) (quoting *In re O'Hearn*, 339 F.3d 559, 564 (7th Cir. 2003) (internal quotation marks omitted)). To satisfy the third *Brunner* prong, "a debtor may not 'willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *Id.* In *Mosko*, the female debtor did not work during the summer months so that she could spend time with her son and care for her mother. *Mosko*, 515 F.3d at 325. The Fourth Circuit found that "[w]hile this desire may be understandable, it is not an undue hardship for her to endure the sacrifice most parents experience in working a full calendar year." *Id.* Similarly, the Plaintiff provided little or no explanation why she did not pursue employment in her field of study, other than occasional work in a home office. The employment at a gift shop and clothing store, without more evidence, does not support that the Plaintiff worked diligently to generate income to pay the Notes. The Plaintiff has not demonstrated good faith in her repayment efforts.

29. Compounding the finding of lack of good faith and failure to meet the burden under the third prong of the *Brunner* test is the apparent diversion of income to pay the Faulkner Note, secured by property in which the Debtor, conveniently, held no interest. The amount paid on the Faulkner Note is unknown. Assuming a zero percent interest rate, the repayment was almost $54,000.[4] The amount repaid on the Faulkner Note would have paid a substantial part, if not all, of the Notes. Further, while the Plaintiff could not control the disposition of assets from Faulkner,

---

[4] The Plaintiff presented no evidence that the Faulkner Note was forgiven in whole or in part.

the Plaintiff has provided no reasonable explanation why the gifts went to Raynor and not her. The Residence and the Faulkner inheritance obviously benefitted her and Raynor, her husband of 56 years. Without more, the Plaintiff has not demonstrated the good faith needed to carry the burden of proof required to meet the third prong of the *Brunner* test.

Conclusion

The Plaintiff met the burden of the first and second prongs of the *Brunner* test but has not met the burden under the third prong. The debt associated with the Notes is nondischargeable pursuant to 11 U.S.C. § 523(a)(8), because all three *Brunner* prongs must be met for student loans to be considered an "undue hardship." In accordance with Rule 58(a) of the Federal Rules of Civil Procedure, incorporated by Rule 7058 of the Federal Rules of Bankruptcy Procedure, the court will enter a separate Judgment consistent with this Opinion.

**END OF DOCUMENT**